CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
March 31, 2023
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 7:19-cr-00024-4 |
| v. ) | |
| ) | |
| XYLINA FANCHON BARLOW, ) | By: Michael F. Urbanski |
| Defendant-Petitioner ) | Chief United States District Judge |

## MEMORANDUM OPINION

This matter comes before the court on Xylina Fanchon Barlow's emergency motion for compassionate release. Barlow filed her motion on February 20, 2023, seeking compassionate release based on her allegation that her family circumstances present an extraordinary and compelling reason for a sentence reduction. Mot., ECF No. 452. The government has filed a response in opposition to the motion, Mem. Opp'n, ECF No. 454, and Barlow has filed a reply. Reply, ECF No. 455. As discussed below, the court will **DENY** the motion.

I.

Barlow was involved in a drug-trafficking operation where she transported large quantities of methamphetamine, heroin, cocaine, and fentanyl across the country in exchange for payments in cash. Pre-Sentencing Investigation Report ("PSR"), ECF No. 323, ¶¶ 9–13. Barlow, romantically involved with the leader of the operation, Stephen Vaughn, was less involved than others in the conspiracy, but did make several interstate trips transporting narcotics for Vaughn before the incident giving rise to her arrest and conviction. Id. On August 27, 2018, while transporting 11.5 pounds of methamphetamine, 8 pounds of cocaine, and 2.5 pounds of fentanyl from Las Vegas, Nevada to Roanoke, Virginia, Barlow was stopped and arrested. Id.

After she was indicted for conspiracy to distribute and possession with intent to distribute various drugs, Barlow entered into a plea agreement on May 4, 2021, in which she pled guilty to a lesser included conspiracy charge relating to heroin. Plea Agreement, ECF No. 243, at 2. At sentencing, the court, finding Barlow eligible for a sentencing safety valve, did not impose the 10-year mandatory minimum sentence that would otherwise be required.[1] ECF No. 236. In addition, noting mitigating factors including her limited involvement and reduced culpability, the court sentenced Barlow to a term of incarceration of 24 months, to be followed by a 2-year term of supervised release, varying downward from the PSR Guideline range of 87 to 108 months of imprisonment. J., ECF No. 365. Finally, the court deferred Barlow's reporting date to the Bureau of Prisons (BOP) to allow Barlow six months to care for and bond with A.T., her newborn daughter. Id.

After Barlow reported to the BOP, A.T.'s father, Antoine Thompson, had been her primary caregiver. However, on January 12, 2023, Thompson was sentenced to a term of incarceration of 84 months in federal court on unrelated charges. Thompson reported to the BOP to begin serving his sentence on February 28, 2023. Mot., ECF No. 452, at 1. While both parents have been incarcerated, A.T. has been living with a paternal aunt, Denise Hayes. Reply, ECF No. 455, at 2. Barlow currently is housed at FPC Alderson with a projected release date of July 9, 2023.[2] She is eligible for release to a halfway house on April 28, 2023. Mot., ECF No. 452 at 1. When Barlow is released, she will live with her grandmother, Petunia Barlow, and A.T.[3]

---

[1] See 18 U.S.C. § 3553(f) (limiting application of statutory minimum sentence to defendants with little criminal history who engaged in non-violent offenses).
[2] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last viewed March 24, 2023).
[3] Barlow has five minor children in total. Living arrangements for her other children are unclear.

## II.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act ("FSA"), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction
> . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Accordingly, Barlow's requested relief requires the court to consider (1) if she exhausted her administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in her sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

Regarding exhaustion of administrative remedies, Barlow asserts that she submitted her request for compassionate release to the Warden of FPC Alderson on September 23, 2022, and it was denied on November 15, 2022. See Ex. A, ECF No. 452-1; Ex. B, ECF No. 452-2. The government does not contest that Barlow has exhausted her administrative remedies. Accordingly, the court finds that Barlow has satisfied the statute's exhaustion requirements.

### A. Extraordinary and Compelling Reason

The court must next consider whether Barlow has shown an extraordinary and

compelling reason for a reduction in her term of imprisonment. 18 U.S.C. § 3582(c)(1)(A). The United States Sentencing Commission Guidelines Manual ("USSG") § 1B1.13 policy statement provides that "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of her sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) as determined by the Director of the Bureau of Prisons ("BOP") for "other reasons" than, or in combination with, those described in Application Notes (A)–(C). U.S. Sentencing Comm., Guidelines Manual § 1B1.13 at cmt. n.1(A)–(D). In United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020), the Fourth Circuit held that the USSG policy statement was not applicable to defendant-filed motions for compassionate release because it predates the passage of the First Step Act. However, it "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7.

Barlow asserts that because her very young daughter lacks a parental caregiver, there exists an extraordinary and compelling reason warranting a reduction in her sentence. The court disagrees. Courts generally deny compassionate release when another suitable caregiver is available for the defendant's child. See United States v. Lottier, No. 7:16-cr-030, 2020 WL 7233363, at *2 (W.D. Va. Dec. 7, 2020) (collecting cases denying compassionate release where there was an available caregiver for defendant's child); see also United States v. Guest, No. ELH-16-0499, 2022 WL 2104492, at *13 (M.D.N.C. June 9, 2022) ("[I]n the absence of evidence that an inmate is the sole available caregiver for his child, district courts typically find

that the inmate's family circumstances do not amount to an extraordinary and compelling reason within the meaning of 18 U.S.C. § 3582(c)(1)(A).")

Barlow acknowledged this general practice when she cited to United States v. Landry, No. 2:16-cr-171 (RCY), 2021 WL 5493497, at *6 (E.D. Va. Nov. 22, 2021), in which the court held that despite his wife's deteriorating medical condition, the defendant had not made a "robust evidentiary showing" that he was the only available caregiver for his autistic son. To support her argument for compassionate release, Barlow points instead to three cases in which courts have found a defendant's family circumstances extraordinary and compelling. However, in two of those cases, United States v. Hicklin, No. 6:16-cr-2, 2020 WL 7406791, at *2 (W.D. Va. Dec. 11, 2020), and United States v. Bucci, 409 F. Supp. 3d. 1, 2 (D. Mass. 2019), the courts found an extraordinary and compelling reason for release only where the defendant had shown that he was the only possible caregiver for an incapacitated parent.

Only in United States v. Henriquez, No. 1:15-cr-225-1, 2021 WL 5771543, at *3–5 (M.D.N.C. Dec. 6, 2021), did the court grant compassionate release where the defendant's incapacitated parents had some alternative caregiver, through care provided for a few hours per day by a home health aide. The court expressly acknowledged that courts generally deny relief where other caregivers are available and stated that the defendant's family circumstances alone were not, by themselves, extraordinary. Id. at *4. The court found Henriquez presented extraordinary and compelling circumstance only when his circumstances were considered along with his model behavior in prison, deep efforts at successful rehabilitation, work ethic, family circumstances, support of Bureau of Prisons employees, and length of sentence served. Id. at *5.

5

Taken as a whole, case law indicates that extraordinary and compelling circumstances based on the need to care for a child or incapacitated adult are found only where the defendant is the only possible caregiver of the close family relative they seek release to care for. Because Barlow is not the only available caregiver for A.T., the cases cited do not support her argument for compassionate release.

A.T. currently is living with her paternal aunt, Hayes, along with Barlow's other daughter. Barlow has alleged that even if released to a halfway house on April 28, 2023, due to distance, she cannot care for her child. She will not be released from custody until July 9, 2023, which is a little more than three months from now. Although Barlow reports that Hayes has said that because she is sixty years old and works outside the home, caring for a toddler is difficult and exhausting, there is no allegation that Hayes is "incapacitated." See Guest, 2022 WL 2104492 at *13 (noting that "incapacitation" is a high bar and that defendants must show that a caregiver has suffered a severe injury or suffers from a severe illness that renders the caregiver incapable of caring for a child) (citing BOP Program Statement § 5050.50(5)).[4] In addition, the BOP Program Statement provides that the inmate must show that the incapacitated family member was and still is the only family member capable of caring for the inmate's minor child. Id.

Barlow has made no allegation that Hayes is incapacitated, that A.T. is in danger, or that the care she is receiving while living with Hayes is inadequate. Without a showing that Hayes is unsuitable to care for A.T., Barlow's family circumstances do not rise to the level of

---

[4] While courts are not bound by BOP Program Statements, the BOP criteria are helpful guidance. United States v. Roberts, No. CCB-13-0407, 2021 WL 5744687 at *1 (D. Md. Dec. 1, 2021).

6

an extraordinary and compelling reason to justify compassionate release.[5]

Barlow cited to an extensive body of research that links parental separation or incarceration to damage to a child's behavioral and cognitive development and the court has considered the research. However, the research provided by Barlow is limited as it is general, contains many potentially confounding variables, and is not directly related to the facts of the case at bar. As such, it is insufficient to provide a basis for finding an extraordinary and compelling reason to grant compassionate release, given the individual and fact-intensive analysis required on a compassionate release motion.

The court also considered Barlow's argument that the USSG § 1B1.13 policy statement excludes the requirement that the defendant "is the only available caregiver" as an extraordinary and compelling reason for release if the "caregiver of the defendant's minor child dies or becomes incapacitated," as it does for a defendant's spouse or partner. U.S. Sentencing Comm., Guidelines Manual § 1B1.13 at cmt. n.1(C). However, case law supports the conclusion that courts generally do not find an extraordinary and compelling reason for release without a showing that there is no other suitable caregiver for the minor child. "The simple fact is that the [c]ourt is confronted on a regular basis with the fact that defendants who are incarcerated are separated from their families, including a spouse, a child, even newborn children. For that reason, those circumstances simply cannot be considered as extraordinary." United States v. Pilgrim, No. 3:19-cr-50-01, 2021 WL 2003548, at *3 (E.D. Va. May 19, 2021).

---

[5] The court further notes that Barlow also has not shown that her grandmother, Petunia Barlow, with whom she and her daughter would stay with if compassionate release were granted, is not a suitable alternative caregiver for her daughter. In addition, as of the date of the PSR, Barlow had a mother and two siblings living in Roanoke. While the court does not presume that these relatives would be suitable caregivers for A.T., the PSR states that upon Barlow's incarceration, Barlow's now approximately four-year-old daughter would live with Barlow's mother. PSR, ECF No. 323 ¶¶ 38–39.

7

In keeping with this authority, the court declines to grant compassionate release to Barlow because A.T. has a suitable caregiver.

### B. 18 U.S.C. § 3553(a) Factors

The court further finds that even if Barlow had showed an "extraordinary and compelling reason" for granting compassionate release, the court would nevertheless decline to release her based on the § 3553(a) factors. Under § 3553(a), the court must consider the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
> (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . . .
>
> (5) any pertinent policy statement –

8

(A) issued by the Sentencing Commission . . . .

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Turning first to the nature and circumstances of the offense, the court is struck by the large quantity of drugs Barlow had in her vehicle at the time she was stopped—11.5 pounds of methamphetamine, 8 pounds of cocaine, and 2.5 pounds of fentanyl. PSR, ECF No. 323 ¶ 9. While Barlow professed to know few details about what she was carrying, she understood that she was carrying drugs or money in furtherance of a drug enterprise. Id. ¶ 11. Barlow also transported large quantities of heroin from the New York and New Jersey area to Roanoke. Id. ¶ 12. The court is familiar with the death and destruction wrought by drugs in the Roanoke area and finds that Barlow's role in transporting the large quantities of drugs weighs heavily against a sentence reduction.

Regarding Barlow's history and characteristics, her criminal history was minimal, with a score of zero, and she was assigned a criminal history category of I. Id. ¶ 31. Since being incarcerated, she has spent time reading and reflecting on how to become a better person and how to be a better mother to her children. Letter, ECF No. 452-3. She has obtained her GED and has plans to further her education and to start a non-profit organization to benefit young people in the community. Id. The court finds that Barlow's post-conviction behavior weighs in favor of a sentence reduction.

Regarding the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to

9

criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, the court took these factors into consideration when Barlow was sentenced less than two years ago. The 24-month sentence Barlow received represented a drastic reduction from the sentence the court could have imposed because Barlow faced a mandatory minimum sentence of 10 years and a guidelines sentence of 87 to 108 months. PSR, ECF No. 323 ¶¶ 41, 42. The reduction in her sentence was based on her eligibility for the safety valve under 18 U.S.C. § 3553(f), and the downward variance from her guidelines sentence was based on Barlow's lesser role in the offense and lack of criminal history. Statement of Reasons, ECF No. 366 at 3. The court noted at the time that Barlow was on bond for two-and-a-half years with "remarkably good behavior." Id. Thus, while the § 3553(a)(2) factors support a reduced sentence, the court already considered those factors and imposed a reduced sentence. A further reduction is not warranted.

The court reaches the same conclusion when looking at the kinds of sentences available, the applicable sentencing ranges, and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(3), (4), and (6). The court carefully assessed these factors when it sentenced Barlow in June 2021 and finds that the 24-month sentence remains appropriate. None of the other § 3553(a) factors weigh in favor or against a sentence reduction.

The court is impressed by Barlow's commitment to bettering herself and is hopeful that she will be able to live a law-abiding life and fulfill her potential as a person and a mother to her children. The court also is mindful of her deep desire to be reunited with A.T. and her other children as soon as possible. Nevertheless, the court concludes that Barlow's circumstances do

not present an extraordinary and compelling reason to grant compassionate release and that even if she had made such a showing, the § 3553(a) factors weight against a reduction of her already relatively short sentence.

For the reasons stated herein, the court **DENIES** Barlow's motion for compassionate release, ECF No. 452. The clerk is directed to send a copy of the order to the petitioner, her counsel of record, and the United States. An appropriate order will be entered.

It is so **ORDERED**.

Entered: *March 30, 2023*

Michael F. Urbanski
Chief United States District Judge